Filed 6/30/15  P. v. Robinson CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IAN ROBINSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B258316<br>(Super. Ct. No. NA099145-01)<br>(Los Angeles County) |

Ian Robinson appeals a judgment following conviction of assault with a deadly weapon, and assault by means likely to produce great bodily injury, with findings that he personally inflicted great bodily injury, personally used a deadly weapon, suffered four prior serious felony and strike convictions, and served five prior prison terms.  (Pen. Code, §§ 245, subds. (a)(1), (4), 12022.7, subd. (a), 12022, subd. (b)(1), 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).)[1]  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

Robinson, his younger brother Anton, and their mother Sharon lived in a mobile home park in Long Beach.[2]  The day prior to the charged crimes, Anton was

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

[2] We shall refer to the victim and his mother by their first names, not from disrespect but to ease the reader's task.

dismissed from a sober-living home, and Robinson reappeared at his mother's home after a four-day absence.

In the evening of May 13, 2014, Robinson and his girlfriend argued inside his bedroom in the mobile home. Later, Robinson accompanied her to the bus stop outside the mobile home park. When they met and argued with a bystander there, the park security guard summoned Sharon and Anton. After Anton arrived at the bus stop, Robinson asked him "to fight [the] guy." Anton refused, and he, Robinson, and Sharon returned home.

Anton then lay down to sleep for the evening. Robinson entered the bedroom and "berat[ed]" him for not fighting the man at the bus stop. Anton responded that Robinson was a "bitch and pussy and coward" for not fighting the man. In response, Robinson straddled Anton and began "pummeling" him in the face with "full force."

When Robinson ceased the assault, Anton walked to the bathroom to tend to his injuries. Robinson soon entered the bathroom, shoved Anton backward into the shower, and struck and kicked him. Robinson also struck Anton repeatedly with the wooden shaft of a toilet plunger, "like chopping wood."

Anton freed himself, went to the kitchen, and took the telephone that his mother held. Robinson grabbed the phone from Anton, struck him with it, and smashed it on the floor. Robinson resumed kicking and punching Anton. Following Sharon's unsuccessful attempts to stop the assault, she found a second telephone and telephoned for police assistance.

Meanwhile, Robinson stopped the assault, but Anton followed him into a bedroom and punched him in the head repeatedly. Robinson bit Anton in response. Robinson then retrieved a marble athletic trophy and struck Anton in the head with the marble base. Anton ran outside and sat down. Robinson followed, kicked Anton several times, and spit in his face. Police officers soon arrived.

The mobile home was "trashed" and "demolished." Walls and carpets throughout the home contained blood spray; the plunger shaft, telephone, and trophy also contained blood. Paramedics drove Anton to the hospital for treatment. He suffered a

fractured orbital socket, fractured jaw, chipped tooth, and multiple lacerations and bite marks. Robinson had a cut on his leg and bruises on his hands, but no visible injuries to his face or head.

During the day of the assault, Anton had consumed the prescription medicine Risperdal and a pint of vodka. He was then 27 years old, 5 feet 11 inches tall, and weighed 215 pounds. Robinson was then four years older than Anton, 6 feet tall, and weighed 240 pounds.

At trial, Robinson testified that earlier that year, Anton had pinned him to a patio chair and accused him of taking his wallet. When Sharon attempted to pull Anton from Robinson, Anton pushed her and she fell. In a second incident, Robinson found Anton standing over Sharon and her spilled dinner. Anton then struck Robinson who responded by punching Anton down.

Robinson also testified that on the day of the assault, Anton had threatened to "get" him. He stated that Anton later entered his bedroom while he slept, and punched him repeatedly in the face, causing him to have a headache. He managed to stand and he and Anton engaged in a fist fight. Anton then threw the athletic trophy which gashed Robinson's leg.

Robinson stated that he then pursued Anton into the bathroom to "neutralize the threat." After Anton struck him with the plunger, he struck Anton with the plunger shaft and punched him into the shower. When Anton arose from the shower floor, the fight continued in the dining room where Anton threw "ineffective" punches and Robinson threw "meaningful" punches. Robinson denied kicking Anton, seizing the telephone from him, or striking him with the telephone. Robinson summarized the fight as "[Anton] is the one that wanted to fight . . . . It wasn't the other way around." In sum, Robinson defended the prosecution with a claim of self-defense.

The jury convicted Robinson of assault with a deadly weapon, and assault by means likely to produce great bodily injury. (§ 245, subds. (a)(1), (4).) The jury also found that during commission of the crimes, Robinson personally inflicted great bodily injury on his victim and personally used a deadly weapon. (§§ 12022.7, subd. (a), 12022,

subd. (b)(1).)  In a separate proceeding, the trial court found that Robinson suffered four prior serious felony and strike convictions and served five prior prison terms.  (§§ 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).)

The trial court sentenced Robinson to a prison term of 43 years to life, consisting of 25 years to life for assault with a deadly weapon, 15 years for three prior serious felony convictions, and three years for the great bodily injury enhancement.  The court struck the deadly weapon use enhancement and the prior prison term allegations, and stayed sentence for the assault by means likely to produce great bodily injury count. (§§ 1385, subd. (a), 654.)  The court also imposed a $300 restitution fine, a $300 parole revocation restitution fine (stayed), an $80 court security assessment, and a $60 criminal conviction assessment, and awarded Robinson 107 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)  During sentencing, the trial judge described Robinson as "a dedicated career criminal" who brutally beat his brother "while on probation for beating somebody else and robbing somebody else."

Robinson appeals and contends that the trial court erred by:  1) denying two requests for a continuance and 2) precluding evidence of Anton's mental illness and his prior violent acts.

*DISCUSSION*

*I.*

Robinson argues that the trial court abused its discretion by denying his two requests for a continuance.  He points out that prior to trial, he requested a three-week continuance to allow a medical expert witness to testify regarding the significance of Anton's mental illness and behavior on the day of the assault.  During trial, Robinson also requested a continuance to allow:  1) an expert witness to testify concerning Anton's mental illness and his consumption of psychotropic medication and alcohol; and 2) police officer witnesses to testify concerning Anton's prior violent conduct.  Robinson contends that the court's prejudicial rulings denied him due process of law and the effective assistance of counsel pursuant to the United States and California Constitutions.

4

The trial court may grant a continuance upon a showing of "good cause." (§ 1050, subd. (e); *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1181.) Whether good cause exists is a matter for the court's discretion. (*Hajek and Vo*, at p. 1181.) The court must consider the benefit that the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors, and the court, and whether substantial justice will be accomplished or defeated by granting the motion. (*People v. Doolin* (2009) 45 Cal.4th 390, 450.)

On review, we consider the circumstances of each case and the reasons presented for the request to determine whether the trial court's denial of a continuance was so arbitrary as to deny due process of law. (*People v. Doolin*, *supra*, 45 Cal.4th 390, 450.) "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." (*Ungar v. Sarafite* (1964) 376 U.S. 575, 589.) The party challenging a ruling regarding a continuance bears the burden of establishing an abuse of discretion. (*People v. Hajek and Vo*, *supra*, 58 Cal.4th 1144, 1181.) An order denying a continuance is seldom successfully attacked. (*Ibid.*)

The trial court did not abuse its discretion because Robinson did not establish "the materiality of the evidence" of Anton's mental illness and his consumption of alcohol and prescribed medication on the day of the assault. (*People v. Roybal* (1998) 19 Cal.4th 481, 504 [counsel merely believed that expert, who had not reviewed report, would testify favorably]; *People v. Beeler* (1995) 9 Cal.4th 953, 1004 ["[C]ounsel seemed to assume that proof of some type of organic brain damage would be relevant to a material issue"].) Specifically, Robinson did not establish that an expert witness would have testified favorably regarding Anton's mental illness and thereby substantiate his self-defense theory. (*People v. Williams* (1980) 102 Cal.App.3d 1018, 1031-1032.)

Moreover, the trial court noted that it would probably preclude evidence relating to Anton's mental illness, pursuant to Evidence Code section 352. Such a ruling would not have been an abuse of discretion, given the excessive violence that Robinson inflicted upon Anton. To qualify as self-defense, a defendant may apply only that degree of force that is reasonably necessary. (CALJIC No. 5.30, as instructed here.) Moreover,

5

an assault with the fists does not justify use of a deadly weapon in self-defense unless the person believes and a reasonable person in the same circumstances would believe that the assault is likely to inflict great bodily injury upon him. (CALJIC No. 5.31, also as instructed here.)

The same reasoning applies to police officer testimony regarding Anton's prior acts of violence and his psychiatric commitment one and one-half years prior pursuant to Welfare and Institutions Code section 5150. The trial court noted that evidence of Anton's prior violent acts was "so slim and sketchy as to any really awful conduct [that] there is nothing to be gained." Robinson did not meet his burden of establishing the materiality of the evidence necessitating a continuance. (*People v. Beeler*, *supra*, 9 Cal.4th 953, 1003 [statement of general rule].)

## II.

Robinson contends that the trial court abridged his right to present a defense, violating his rights to a fair trial, due process of law, and a jury trial pursuant to the United States and California Constitutions. He points out that the court denied his request for a continuance to present a medical expert and police officer witnesses regarding Anton's mental illness and his prior acts of violence. Robinson adds that the court denied his request to recall Sharon and Anton concerning Anton's violence against family members. Robinson asserts that the evidence was relevant to his claim of self-defense.

As a general rule, a defendant has no constitutional right to present all relevant evidence in his favor. (*People v. Guillen* (2014) 227 Cal.App.4th 934, 1019.) Application of the ordinary rules of evidence does not impermissibly infringe on the defendant's right to present a defense. (*People v. Lucas* (2014) 60 Cal.4th 153, 270; *People v. Gonzales* (2012) 54 Cal.4th 1234, 1258.) Thus, constitutional principles are not offended by rulings that exclude evidence that is repetitive, marginally relevant, or that poses an undue risk of prejudice or confusion of the issues. (*Gonzales*, at p. 1259.) In order for a defendant's constitutional rights to override the application of the ordinary

rules of evidence, the proffered evidence must have more than slight relevancy to the issues and must be of substantial and significant value. (*Guillen*, at p. 1019.)

The trial court did not impermissibly infringe upon Robinson's right to present a claim of self-defense. Robinson testified and presented his version of the assaults, contending that Anton attacked him and he responded in self-defense. Robinson also testified that Anton pushed Sharon during two separate incidents earlier that year. As the trial judge stated, the two prior incidents were "so insubstantial as to not be of real use in the case." The evidentiary and continuance rulings did not effect a "'blanket exclusion'" of Robinson's self-defense claim. (*People v. Page* (1991) 2 Cal.App.4th 161, 185.) Although the complete exclusion of a defense might rise to the level of a constitutional violation, excluding defense evidence on a minor or subsidiary point does not impair the due process right to present a defense. (*People v. Thornton* (2007) 41 Cal.4th 391, 443.)

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

7

Arthur H. Jean, Jr., Judge

Superior Court County of Los Angeles

_____

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Garett A. Gorlitsky, Deputy Attorney General, for Plaintiff and Respondent.